UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

| | |
|---|---|
| ALLEN JACKSON )<br>)<br>Plaintiff, )<br>) No. _____<br>v. )<br>)<br>KONECRANES, INC. )<br>)<br>)<br>Defendant ) | |

# COMPLAINT

\*   \*   \*   \*   \*

Comes the Plaintiff, Allen Jackson, by and through Counsel, and for his Complaint against Defendant Konecranes, Inc. ("Konecranes") states as follows:

## JURISDICTION AND VENUE

1. At all times relevant to this Complaint, Plaintiff Allen Jackson ("Mr. Jackson") was a resident of Lexington, Fayette County, Commonwealth of Kentucky. At the time of his illegal termination, Mr. Jackson was based out of Konecranes' Georgetown, Scott County, Kentucky office. This is also where Mr. Jackson's retaliatory termination took place.

2. Defendant Konecranes is a for-profit, Texas corporation. Its principal office is located at 4401 Gateway Blvd., Springfield, OH 45502 and can be served via its Registered Agent: National Registered Agents, Inc., 306 W. Main Street, Suite 512, Frankfort, Kentucky 40601.

3. This Court has jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since the events giving rise to these claims occurred within the Eastern District of Kentucky.

5. The damages sought by the Plaintiff are in excess of the minimum jurisdictional requirements of this Court.

**UNDERLYING FACTS**

6. Plaintiff Mr. Jackson began his employment with the Defendant in November 2011. At the time of his illegal termination on April 8, 2020, Plaintiff was working for Defendant as a crane inspector.

7. On January 9, 2019, while Mr. Jackson was on duty, he was getting out of his truck and slipped on black ice. Mr. Jackson hit the ground, causing bodily injuries. He informed the Defendant of his injuries and filed a claim for workers' compensation insurance.

8. For the next approximately six (6) months, Mr. Jackson was put on light duty by the Defendant, which essentially amounted to him sitting in an office.

9. While on light duty, the Defendant's employees made negative and/or mocking comments about Mr. Jackson's injuries. For instance, Mr. Jackson's boss openly complained that he was on light duty. Another employee questioned why, if Mr. Jackson could write with a pen, he couldn't perform his normal job duties.

10. On several occasions, Mr. Jackson's immediate supervisor tried to accompany Mr. Jackson to his medical appointments. When this supervisor attempted to physically enter Mr. Jackson's exam room, he was denied access by the medical personnel.

11. In July 2019, Mr. Jackson's restrictions changed to allow a limited amount of physical work, including pushing and pulling.

12.Around this same time, Mr. Jackson returned to some crane inspection duties, subject to his modified medical restrictions.

13.Mr. Jackson continued to receive negative comments from Defendant's employees regarding his work-related injuries. His inspection coordinator expressed frustration with the amount of time Mr. Jackson needed to complete his job due to his medical restrictions. Another co-worker disparagingly called him a "pussy."

14.Through no fault of his own, Mr. Jackson had to wait inordinately long amounts of time to get certain medical treatments for his work-related injuries approved. For instance, it took several months for him to be approved to see a specialist. In some cases, the medical treatment requested by his physicians was never approved, at all. Such issues with Mr. Jackson's medical treatment negatively impacted his physical well-being.

15.When Mr. Jackson was finally approved to be seen by a specialist at Bluegrass Orthopedics, the doctor lamented that the scans the doctor had requested were not being approved. The doctor stated that this prevented him from seeing the full extent of Mr. Jackson's work-related injury. Such rejections of treatment prevented Mr. Jackson from getting timely and appropriate treatment for his work-related injuries.

16.While Mr. Jackson's medical treatment was being delayed, he began to experience migraines, a weakening grip, and muscle fatigue.

17.In late 2019, Mr. Jackson's specialist finally received approval for an MRI. This MRI showed serious issues in Mr. Jackson's back and neck. Mr. Jackson's specialist doctor tried to refer Mr. Jackson to a neck surgeon. Once again, the doctor's referrals were repeatedly denied by Defendant's workers' compensation insurance adjuster.

18. At the end of 2019, all of Mr. Jackson's medical treatment was abruptly terminated. This cessation, of course, hindered his recovery. Mr. Jackson was prevented from getting physical therapy and seeing the specialist at Bluegrass Orthopedics ("BGO"). Mr. Jackson was told that he was barred from receiving any further medical care until he submitted to a medical examination. The "independent" examination (IME) was to be conducted by a doctor chosen by Defendant's workers' compensation insurance.

19. It took several months for Mr. Jackson to be seen by the Defendant's IME doctor. During this time, Mr. Jackson did not receive any medical treatment for his work-related injuries.

20. In February of 2020, Mr. Jackson attended the IME in London, Kentucky. Mr. Jackson brought his latest MRI. When he showed it to the IME doctor, the doctor claimed the MRI was not relevant. The IME doctor similarly refused to consider additional relevant information about Mr. Jackson's physical condition. The IME doctor ultimately ordered an MRI of Mr. Jackson's elbow, even though the specialist doctor from BGO had previously referred Mr. Jackson to a neck surgeon, albeit unsuccessfully.

21. In late February of 2020, Konecranes assigned Mr. Jackson to work as a crane inspector on site at Novellis in Richmond, Kentucky.

22. While performing work at Novellis, Mr. Jackson remained on medical restrictions from his doctor.

23. The individual who directed Mr. Jackson's work at Novellis expressed his displeasure with Mr. Jackson's medical restrictions caused by his previous workplace injury. This individual further referred to Mr. Jackson as a "dud."

24. Shortly thereafter, Mr. Jackson was called to a meeting with his Konecranes supervisors, Tyler McKenzie ("Mr. McKenzie") and Ralph Hunley ("Mr. Hunley"). During this

meeting, Mr. Hunley falsely proclaimed to Mr. Jackson that he was no longer on any medical restrictions. Mr. Jackson corrected Mr. Hunley, explaining to him that Mr. Jackson remained on certain medical restrictions from his doctor. Despite Mr. Jackson's accurate statements, Mr. Hunley persisted in his false allegations that Mr. Jackson was no longer on work restrictions.

25. Following this meeting, Mr. Jackson received an off-putting phone call from the adjuster of Konecranes' workers' compensation insurance. The adjuster was extremely hostile, and falsely claimed that Mr. Jackson was not on any medical restrictions. When Mr. Jackson corrected the adjuster and told him that Mr. Jackson was, in fact, still on restrictions from his doctor, the adjuster became so enraged that he abruptly hung up on Mr. Jackson. Immediately after this interaction, Mr. Jackson called the nurse case manager for his workers' compensation claim and informed her about what had just transpired. The nurse case manager told Mr. Jackson she would notate the situation in his file.

26. On April 8, 2020, Mr. Jackson was called into another meeting with Mr. McKenzie and Mr. Hunley, wherein Mr. Jackson's long-time employment with Konecranes was summarily terminated.

27. The reason given by Konecranes for terminating Mr. Jackson's employment was that he supposedly falsified time records. However, Mr. Jackson had been recording his compensable time each week the same way for virtually the entire time he worked at Konecranes. Konecranes had knowledge of Mr. Jackson's timekeeping practice, which was also used by Mr. Jackson's co-workers.

28. The reason given by Konecranes for terminating Mr. Jackson's employment was pretextual. The true reason Konecranes terminated Mr. Jackson's employment was because it was retaliating against him for getting hurt at work and filing a workers' compensation claim.

## **CLAIMS**

### **COUNT I – VIOLATION OF KRS 342.197**

29. Plaintiff incorporates and re-alleges the allegations contained Paragraphs 1-28 as if set forth at length herein.

30. Plaintiff filed and pursued a claim for workers' compensation under KRS Chapter 342.

31. Defendant had actual knowledge of Plaintiff's claim for workers' compensation under KRS Chapter 342.

32. Plaintiff's valid claim for workers' compensation was a substantial motivating factor in and but-for cause of Defendant's decision to terminate him.

33. Pursuant to KRS 342.197, Plaintiff is entitled to compensatory damages for past and present lost wages, as well as past, present and future emotional distress and his reasonable attorney's fees and costs incurred in this action. Plaintiff is further entitled to equitable relief in the form reinstatement to his position of employment at Konecranes, or in the alternative, an award of front pay.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Allen Jackson, by counsel, prays this Honorable Court for all relief allowed by law, including:

1. Damages for unlawful termination in violation of KRS 342.197(1), under KRS 342.197(3), including all compensatory damages for past and present lost wages, humiliation and embarrassment, and other non-pecuniary damages allowed by law, including his reasonable attorneys' fees and costs, all in excess of the jurisdictional limits of this Court. Plaintiff also seeks

equitable relief from this Court, including reinstatement to employment with Konecranes, or alternatively, front pay awarded by the Court.

    2.     For a speedy trial by jury on all issues;

    3.     For any and all other equitable and legal relief to which Plaintiff may appear entitled and the Court deems just and proper.

                      Respectfully Submitted,

                      ROARK & KORUS, PLLC

                      */s/ Tyler Z. Korus*
                      Robert L. Roark, Esq.
                      Tyler Z. Korus, Esq.
                      401 Lewis Hargett Circle, Ste. 210
                      Lexington, KY 40503
                      Phone: (859) 203-2430
                      Fax: (859) 523-6351
                      Rob@roarkkorus.com
                      Tyler@roarkkorus.com
                      COUNSEL FOR PLAINTIFF